# Availability of Money Damages Under the
# Religious Freedom Restoration Act

Section 3(c) of the Religious Freedom Restoration Act, which makes available "appropriate relief" in judicial proceedings against federal and state government entities, does not waive or abrogate the sovereign immunity of federal and state governments against the award of money damages.

October 7, 1994

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

We have considered whether the Religious Freedom Restoration Act of 1993 ("RFRA"), Pub. L. No. 103-141, 107 Stat. 1488, authorizes the recovery of money damages in suits against the United States or state governments.[*] The specific question we have addressed is whether section 3(c) of RFRA, which makes available "appropriate relief" in judicial proceedings against federal and state government entities,[1] waives or abrogates the sovereign immunity that would otherwise bar the award of money damages against the United States and state governments. On this point, we are in agreement with the conclusion of the Second Working Draft ("Working Draft") prepared by the Department's RFRA Task Force: RFRA's reference to "appropriate relief" is not sufficiently unambiguous to abrogate or waive sovereign immunity for damages. *See* Working Draft at 43-44.

"Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) (internal quotation marks and citations omitted); *see also United States v. Idaho, ex rel. Dir., Dep't of Water Resources*, 508 U.S. 1, 6 (1993). Under this "unequivocal expression" standard, a statutory provision waives sovereign immunity for monetary claims only if there is unavailable any plausible reading of the provision that would not authorize monetary relief. *Nordic Village*, 503 U.S. at 34, 37. It is not enough, in other words, that the provision in question can be read, and even read naturally, to authorize monetary recovery; so long as the provision also is "susceptible" of an interpretation that does not authorize monetary relief, there has been no effective waiver. *Id.* The standard for finding congressional abrogation of state Eleventh Amendment immunity from damages awards is substantially the same. *See id.* at 37; *see also Hoffman v. Connecticut Dep't of Income Mainte-*

---

[*] Editor's Note. In *City of Boerne v Flores*, 521 U.S. 507 (1997), the Supreme Court found the Religious Freedom Restoration Act to be unconstitutional as applied to state governments However, RFRA continues to apply to actions against the federal government.

[1] Section 3(c) provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." "Government" is defined in section 5(1) of RFRA to include both the United States and state governments.

*nance*, 492 U.S. 96, 101-02 (1989) (plurality opinion) (analyzing provision at issue in *Nordic Village* under Eleventh Amendment); *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989) (abrogation of Eleventh Amendment immunity must be "unmistakably clear in the language of the statute"). This strict standard applies even to statutes that are remedial in nature. *See Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (applying strict construction rule to find that Title VII does not waive immunity with respect to recovery of interest).

RFRA's use of the phrase "appropriate relief" does not meet the "unequivocal expression" standard. To be sure, "appropriate relief" could be read broadly to encompass monetary damages. But such language does not clearly and unequivocally reflect an intent to waive sovereign immunity for money damages. The term "appropriate relief" inherently conveys the possibility that the nature and scope of the remedy for different conduct by different defendants could be subject to variance. Accordingly, "appropriate relief" against a sovereign defendant easily can be interpreted to encompass only equitable, non-monetary relief. This narrower construction is further supportable on the ground that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, already has waived the sovereign immunity of the United States against non-monetary relief.[2] *See Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O.L.C. 52, 57-60, 65-66 (1994) (concluding that Fair Housing Act and Rehabilitation Act do not waive federal government's immunity from monetary damages). This waiver applies to any suit against the federal government, whether under the APA or under another statute. *See id.* at 59.[3] At least with respect to the federal government, then, RFRA's provision for "appropriate relief" may well have contemplated actions for non-monetary relief based on the APA waiver. In any event, whether or not the narrow reading of "appropriate relief" is the best reading, it is certainly a "plausible" interpretation. Under *Nordic Village*, this is enough to "establish that a reading imposing monetary liability on the Government [or state governments] is not 'unambiguous' and therefore should not be adopted." 503 U.S. at 37.[4]

---

[2]The APA provides that

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States.

5 U S.C. § 702.

[3]*See also Specter v. Garrett*, 995 F.2d 404, 410 (3d Cir. 1993); *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988); *Alabama v. Bowsher*, 734 F. Supp. 525, 533 (D.D.C. 1990) (discussing D.C. Circuit case law).

[4]Although legislative history cannot supply the "unequivocal expression" that the Supreme Court requires, *see Nordic Village*, 503 U.S. at 37; *Dellmuth*, 491 U.S. at 230, legislative history may be relevant where it reinforces a text-based conclusion that a statute does not waive or abrogate sovereign immunity. RFRA's legislative history is largely silent on this point. It may be of some significance, however, that in estimating the effect of RFRA on direct spending by the federal and state governments, the Congressional Budget Office anticipated awards of attorney's fees but made no mention of possible damages awards. *See* S. Rep. No. 103-111, at 15-16 (1993); H.R. Rep. No. 103-88, at 11 (1993).

It was suggested at a RFRA Task Force meeting that this conclusion is in tension with *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60 (1992), in which the Supreme Court held that a damages remedy is available under Title IX despite the absence of explicit congressional authorization. *Franklin*, however, is not on point here. *Franklin* involved a suit against a school district, and school districts generally are not treated as "arms of the state" to which Eleventh Amendment immunity extends. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977); *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 995 (10th Cir. 1993). Accordingly, the Court in *Franklin* was not faced with a sovereign immunity claim, and had no occasion to apply the "unequivocal expression" standard that governs RFRA suits against the federal and state governments.

It should be noted that the conclusion reached here is hardly anomalous. Money damages are similarly unavailable in civil rights enforcement suits against the states (or, more accurately, against state officers in their official capacities) under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 & n.10 (1989); *Quern v. Jordan*, 440 U.S. 332 (1979). Congress quite reasonably could have chosen to limit RFRA plaintiffs to the same kind of equitable remedies available in such § 1983 actions. Conversely, to the extent § 1983 allows recovery of money damages against state officers in their personal capacities, *see Scheuer v. Rhodes*, 416 U.S. 232 (1974) (state executive officers personally liable for damages under § 1983, subject to qualified immunity), a RFRA claimant also may recover damages against an officer in his or her personal capacity by asserting RFRA in a § 1983 action.

Finally, it is important to recognize that the federal and state governments are not the only potential defendants under RFRA. RFRA's definition of a "government" from which "appropriate relief" may be obtained extends also to state "subdivision[s]," to "official[s]," and to "other person[s] acting under color of law." RFRA § 5(1). Political subdivisions that cannot be characterized as "arms of the state," such as counties and municipal corporations, are not protected by Eleventh Amendment immunity, *see Mt. Healthy*, 429 U.S. at 280; likewise, sovereign immunity poses no bar to the recovery of damages against officials sued in their personal capacities or private parties acting under color of law, *see Hafer v. Melo*, 502 U.S. 21, 25-28 (1991). Accordingly, the "unequivocal expression" standard that governs sovereign immunity cases would not apply in RFRA suits against such entities.

Rather, such cases would be governed by the traditional presumption that all customary judicial relief, including damages, is available when Congress provides a statutory right of action. *See Franklin*, 503 U.S. at 76 (damages available under Title IX's implied cause of action); *Carey v. Piphus*, 435 U.S. 247, 255 (1978) (damages available under § 1983 though Congress did not "address directly the question of damages"); *see generally Bell v. Hood*, 327 U.S. 678, 684 (1946). When sovereign immunity concerns are removed from the equation, in other

words, the interpretive presumption is reversed: as against entities unprotected by sovereign immunity, Congress must provide "clear direction to the contrary" if it wishes to make money damages unavailable in a cause of action under a federal statute. *See Franklin*, 503 U.S. at 70-71 ("absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute"). Because RFRA's reference to "appropriate relief" does not clearly exclude money damages, there is a strong argument that under the *Franklin* standard money damages should be made available to RFRA plaintiffs in suits against non-sovereign entities. *Cf. Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d 1187, 1190-94 (1st Cir. 1994) (under *Franklin* presumption, statute providing for "all appropriate relief" authorizes recovery of money damages).

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*
